**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Roy DICKSON,
Defendant-Appellant.**

No. 82–2416.

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1983.

George J. Parnham, Peter W. Lewis, Houston, Tex., for defendant-appellant.

John M. Potter, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from a criminal conviction for conspiracy to possess cocaine. Because the trial court failed to provide the defendant with his right of allocution, we vacate the sentence and remand for resentencing.

## I. BACKGROUND

Defendant-appellant Billy Roy Dickson was indicted for conspiracy to possess cocaine, 21 U.S.C. § 846 (1976), and possession of cocaine. *Id.* § 841(a)(1). Dickson and the government reached a plea bargain. The plea bargain provided that Dickson would plead guilty to the conspiracy charge and that the government would drop the possession charge and stand mute.

Dickson plead guilty on August 11, 1982. That day he had a presentencing interview with a probation officer, which his counsel did not attend. During the interview, Dickson admitted other unprosecuted offenses. The probation officer also asked for and received the prosecutor's files pertaining to Dickson. This material and Dickson's admissions were used in the presentencing report.

On October 5, 1982, the court held a sentencing hearing. First, Dickson's counsel moved to withdraw Dickson's guilty plea on the ground that the prosecution had violated its agreement to stand mute by providing its files on Dickson to the probation officer preparing the presentencing report. The court denied that motion. Dickson's counsel objected to the presentencing report on two grounds. First, the report included admissions of criminal activity made by Dickson in the presentencing interview without the assistance of counsel. Second, the report contained improper statements by Louisiana law enforcement officials regarding Dickson's reputation and referred to Dickson's lack of cooperation with DEA agents. The court agreed to disregard the reputation references, but otherwise relied on the report.

Dickson's counsel introduced into evidence a ten minute videotape including Dickson; he also called a psychologist to testify, but he did not call Dickson. The court did not ask Dickson personally if he wished to make a statement. The court sentenced Dickson to five years and assessed a $5,000 fine. Dickson now appeals.

On appeal Dickson raises four arguments. First, Dickson argues that the presentencing interview was held without counsel in derogation of Dickson's sixth amendment right to counsel. Thus, it was error for the court to have relied upon the report in sentencing. Second, Dickson claims he should have been allowed to withdraw his guilty plea because the government breached the plea bargain. Third, Dickson argues that the presentencing report contains improper material. Finally, Dickson urges that the trial court denied him his right to allocution. We shall address these arguments in turn.

## II. THE PRE–SENTENCING INTERVIEW

After accepting Dickson's guilty plea, the court instructed Dickson to meet with the probation officer to prepare the presentencing report:

> If you will meet with the probation officer—I see he is now in the courtroom—directly after we get through and give him all the information you can so when I come to sentence you, I will have all the facts I need about your background. And continue to confer with Mr. Parnham [Dickson's counsel] as you have been doing.

Record at II–12. Parnham stated that he did not attend the interview because the probation department told him the interview would be about half an hour long and that he could help Dickson prepare a statement later. Instead, the interview lasted several hours. Record at III–13. In the course of the interview Dickson admitted to prior criminal activity and this admission apparently colored the court's sentencing decision.

Dickson now argues that his sixth amendment right to counsel was violated by conducting the presentencing interview without counsel.[1] Dickson claims that under *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and *Massiah v.*

*United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the presentencing interview was a critical stage of the criminal process and thus Dickson had a right to have counsel present during the interview. *But see Baumann v. United States,* 692 F.2d 565, 577–78 (9th Cir.1982) (no right to counsel at presentencing interview).

Our Circuit has not yet addressed the question of whether a presentencing interview is a critical stage of the criminal process and we need not do so now. Even assuming it to be a critical stage, we find that Dickson waived any right to counsel. Waiver of counsel must be knowing, voluntary, and intelligent. *See, e.g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Lyles v. Estelle,* 658 F.2d 1015, 1019 (5th Cir.1981). In this case Dickson's waiver was not merely knowing and voluntary, it was made with the knowledge and approval of Dickson's counsel. Not only was Dickson's counsel not excluded from the interview, the court specifically invited his continuing participation. Certainly, had the interview been merely the expected half hour long, we would find waiver. We do not believe that the fact that the interview was longer than expected serves to vitiate the waiver.

## III. BREACH OF THE PLEA BARGAIN AND WITHDRAWAL OF THE PLEA

In response to a request from the probation department, the prosecution provided its files on Dickson for use in preparing the presentencing report.[2] Dickson argues that this constituted a breach of the prosecutor's agreement to "stand mute" in the plea bargain and entitled him to withdraw his plea of guilty. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Jones v. Estelle,* 584 F.2d 687, 689 (5th Cir.1978). We do not construe the plea bargain as barring the prosecution from providing its files when asked to do so.

1. Because of his guilty plea, Dickson does not raise any fifth amendment self-incrimination claim.

2. The prosecution did not affirmatively attempt to provide the files and declined to make a sentencing recommendation to the probation department when requested to do so.

The Court: Mr. Dickson, I understand from the lawyers there is an agreement between them that if you plead guilty to count 1, the government will dismiss count 2; and at the sentencing the government will not recommend anything one way or the other in your case. That is all the government has agreed to. Is that your understanding?

The Defendant: Yes, your honor.

The Court: Is there any other plea bargain in any way in this case?

Mr. Young [the prosecutor]: No, your honor.

Mr. Parnham: No, your honor.

Record at II–10 to 11.

Clearly the agreed upon interpretation of "stand mute" was that "at the sentencing the government will not recommend anything one way or the other." If that were not Dickson's view the court certainly provided an opportunity for clarification. Having remained silent at that time, Dickson cannot now urge a different interpretation. We may reverse the decision of the court not to allow withdrawal of the guilty plea only for abuse of discretion. *United States v. Davila,* 698 F.2d 715, 721–23 (5th Cir.1983). We find no such abuse on these facts.

### IV. THE PRESENTENCING REPORT

■ Dickson argues that the presentencing report contained improper material upon which the court could not legitimately rely in assessing punishment. First, Dickson claims that the report included unfavorable comments on Dickson's refusal to cooperate with DEA agents. That refusal, Dickson says, was nothing more than an assertion of his fifth amendment right against self-incrimination. An assertion of that constitutional right may not be impaired by collateral use. *See, e.g., Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (defendant's silence after *Miranda* warnings may not be used to impeach testimony at trial). We find no impairment here. A court has wide discretion in considering information in assessing punishment, *United States v. Ochoa,* 659 F.2d 547, 549 (5th Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982); *United States v. Martinez,* 584 F.2d 749, 750 (5th Cir.1978), and in particular, a judge may consider cooperation or the lack of cooperation. *Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). Accordingly, the trial court did not abuse its discretion in considering Dickson's lack of cooperation.

■ Finally, Dickson complains that the court considered evidence of unindicted offenses, thus, in effect, punishing Dickson for crimes for which he had not been convicted. However, the court may consider evidence of crimes for which the defendant has not been convicted. *United States v. Benton,* 637 F.2d 1052, 1060 (5th Cir.1981); *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir.1977). In any event, the evidence here was Dickson's own admission of criminal activity. In short, we find no indication that the trial judge relied upon any improper material in the presentencing report.[3]

### V. ALLOCUTION

■ Finally, Dickson contends that he was improperly denied his right to allocution under Fed.R.Crim.P. 32(a)(1). At the sentencing hearing, Dickson presented a ten minute videotape that he narrated, discussing his vocation. Dickson did not personally testify in the hearing, nor did the trial court invite him to make a statement.

The government argues, with some force, that Dickson's videotape constitutes his "statement." Indeed, many defendants might be better served by the use of a videotaped statement, rather than a live statement. That, however, is not sufficient under the cases of this Circuit.

The point of allocution is to allow a criminal defendant the opportunity to speak for himself, rather than through the mouth of

---

**3.** Dickson also complains about the inclusion of adverse comments on his reputation by Louisiana law enforcement officials. The trial court, however, indicated it would disregard those comments. Record at III–7.

counsel. "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). Rule 32(a)(1) provides that "[b]efore imposing sentence, the court ... shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment." This Court has construed Rule 32(a)(1) quite literally as mandating precisely what it appears to mandate—a personal inquiry directed to the defendant. *See, e.g., United States v. Sparrow,* 673 F.2d 862, 864–65 (5th Cir.1982); *Haywood v. United States,* 393 F.2d 780, 782 (5th Cir.1968).

A videotaped statement might, in fact, be an excellent vehicle for a defendant to remove the halting from the eloquence of his statement, thus promoting the purpose of allocution. On the other hand, a videotape might be a vehicle for turning the defendant into the mouthpiece of his counsel-director, which would vitiate the purpose of allocution. The only way to distinguish between the two possibilities is for the judge to extend the defendant the personal opportunity to speak, required by Rule 32(a)(1). Because the court below did not address the defendant personally, we must vacate the sentence.

## CONCLUSION

The court below did not make the mandatory inquiry of the defendant required by Rule 32(a)(1). Accordingly, we must vacate the sentence and remand for resentencing. All of the defendant's other claims we find to be without merit.

**VACATED AND REMANDED.**